IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| **RAYMOND LEE WOODARD, JR.,** § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Case No. _____ |
| § | |
| **THE BERT BELL/PETE ROZELLE NFL** § | |
| **PLAYER RETIREMENT PLAN,** § | |
| § | |
| Defendant. § | |

**JURY TRIAL DEMANDED**

**PLAINTIFF RAYMOND LEE WOODARD, JR.'S ORIGINAL COMPLAINT**

Plaintiff, RAYMOND LEE WOODARD, JR., files this Original Complaint complaining of Defendant, BERT BELL/PETE ROZELLE NFL PLAYERS RETIREMENT PLAN, and as claim for relief shows:

**PARTIES**

1. Plaintiff, RAYMOND LEE WOODARD, JR, is a natural person and a citizen of the State of Texas residing in Corrigan, Polk County, Texas.

2. Defendant, the BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN, ("Retirement Plan" or "Defendant") is an employee pension benefit plan that can be served with citation by serving the NFL Retirement Board, Bert Bell/Pete Rozelle NFL Player Retirement Plan, 200 St. Paul Street, Suite 2420 Baltimore, Maryland 21202-2040.

**JURISDICTION**

3. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1331 because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title 1 of the Employee Retirement Income Security Act of 1974 ("ERISA").

1

4. This Court has personal jurisdiction over the Retirement Plan because the Retirement Plan transacts business in this District, has continuous and systematic contacts with this District, has purposefully availed itself of the privileges and benefits of conducting business in this District, and because ERISA provides for nationwide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). Thus, the Retirement Plan has substantial, systematic and sufficient contacts with this District such that being subjected to suit in this District will not offend traditional notions of fair play and substantial justice.

## VENUE

5. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391(b) and (c) because some of the breaches and violations giving rise to Plaintiff's claims for relief occurred in this District.

## AGENCY/RESPONDEAT SUPERIOR

6. Whenever it is alleged in this Complaint that the Retirement Plan did any act, omission or thing, it is meant that the Retirement Plan's partners, managers, members, directors, officers, employees, servants, agents, apparent agents, ostensible agents, agents by estoppel and/or representatives did such act, omission or thing and that at the time such act, omission or thing was done it was done with the actual or implied knowledge of the Retirement Plan or was done with the full authorization or ratification of the Retirement Plan or was done in the normal and routine course and scope of agency or employment of the Retirement Plan's partners, managers, members, directors, officers, employees, servants, agents, apparent agents, ostensible agents, agents by estoppel and/or representatives.

## INTRODUCTION

7.      Plaintiff is a former NFL football player and a participant in the Retirement Plan who brings this action under ERISA, 29 U.S.C. §§ 1001 *et seq.*, against the Retirement Plan to recover benefits due to him under the terms of the Retirement Plan, to enforce his rights under the terms of the Retirement Plan, to clarify his rights under the terms of the Retirement Plan, and to enjoin and obtain appropriate equitable relief pertaining to acts that violate ERISA and/or the terms of the Retirement Plan. The Retirement Plan violated the terms of the plan by failing to provide Plaintiff a full and fair review and by failing to award Plaintiff pension or retirement benefits due and owing him under the terms of the Retirement Plan.

8.      The Retirement Plan is a Taft-Hartley plan established through collective bargaining between the NFL Management Council and the NFL Players Association. It is a retirement, disability, and related benefits plan accessible by eligible former National NFL football players and is considered an employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2) of ERISA. The Retirement Plan provides benefits to eligible former NFL players, including various types of pension or retirement benefits and is administered by a board of six (6) individuals that is composed of three (3) individuals selected by the NFL Players Association and three (3) individuals (3) selected by the NFL Management Council.

## FACTS

9.      Plaintiff was born and reared in Corrigan, Texas and currently makes his home there. After graduating from Corrigan High School, Plaintiff played football at Kilgore College where he was instrumental in leading Kilgore College to the Southwest Junior College Football Conference championship in 1982. Plaintiff then played for the University of Texas and helped to lead the Longhorns to a Southwest Conference Championship in 1983. During his professional

career, Plaintiff played as a defensive lineman for the San Diego Chargers from 1984 to 1985, the Denver Broncos from 1986 to 1987 and the Kansas City Chiefs from 1987 to 1988.

10. After his NFL playing career ended, Plaintiff completed his education by receiving a bachelor's degree from Sam Houston State University in 1988, a master's degree from the University of Texas at Tyler in 1991, and in 2014 Plaintiff was awarded his Doctorate in Educational Leadership from Lamar University in Beaumont, Texas.

11. Since retiring from the NFL, Plaintiff has enjoyed a successful coaching career at the high school, junior college, university and professional levels. Plaintiff coached at Navarro College from 2005 to 2007, leading the team to a bowl victory and was named the Southwest Junior College Football Conference Coach of the Year in 2007.  In 2008, Plaintiff was hired by Lamar University to re-start the university's football program after an almost 20-year hiatus. Plaintiff served as head coach for the Lamar University Cardinals from the inaugural 2010 season through the 2016 season.

12. Returning to Plaintiff's NFL career, he was drafted by the San Diego Chargers ("Chargers") in the 1984 NFL Draft. Plaintiff signed a contract to provide football playing services for the Chargers on June 28, 1984, and subsequently reported to the Charger's facilities in San Diego to prepare for training camp for the 1984 NFL season. Plaintiff took a physical administered by the Chargers and participated in the Chargers' first practice on July 14, 1984. Later that day Plaintiff was summoned to the office of Chargers' Assistant General Manager, Tank Younger, and was advised that management believed Plaintiff exhibited signs of a weak shoulder during practice that would likely impede his ability to play at full strength during the season. As a result, Plaintiff was informed that although he could stay with the team and practice, he would be placed on the Charger's injured reserve list for the remainder of the year.

13.     In accordance with the information received by Plaintiff from Mr. Younger on July 14, 1984, the Chargers later publicly announced on August 13, 1984 that they had made the mandatory roster cut to 70 players by placing two players on injured reserve and waiving eight other players. *Sports Briefs*, UNITED PRESS INTERNATIONAL, 8-14-1984 ("Going to injured reserve where running back Bobby Craighead and defensive end Ray Woodard."); *see also NFL Roundup* by Lisa Harris, UNITED PRESS INTERNATIONAL, 8-13-1984 ("-- San Diego placed running back Bobby Craighead and defensive end Ray Woodard on injury reserve."); *Sports Transactions*, THE NEW YORK TIMES, 8-15-1984 ("SAN DIEGO (AFC) - Placed Bobby Craighead, running back, and Ray Woodard, defensive end, on injured reserve.") Since Plaintiff's football-related injury was incurred prior to the start of the 1984 season, he was required to spend the entire 1984 season on the injured reserve list – although Plaintiff was allowed to remain and practice with the team and was paid his full salary for that season by the Chargers.

14.     After the conclusion of the 1984 season, Plaintiff remained employed by the Chargers, spending the off season of 1985 in San Diego and went through the Chargers' training camp in 1985. However, Plaintiff was released by the Chargers in August prior to the start of the 1985 regular season after the third preseason game. Plaintiff later signed with the Denver Broncos for the 1986 season but again spent the entire season on injured reserve as had happened in his rookie season with the Chargers. Plaintiff subsequently played for the Denver Broncos for part of the 1987 season and after being released, he played the remainder of the 1997 season with the Kansas City Chiefs before retiring from the NFL before the 1988 season began.

15.     After learning of a change to the Retirement Plan that entitled certain retired players to obtain benefits after three seasons in the NFL – versus the previously required four seasons – Plaintiff applied for Retirement Plan benefits via a Credited Season(s) Application. In connection

with his application, Plaintiff provided the Retirement Board with evidence supporting his claim that 1984 should count as his first Credited Season; which included a letter dated March 5, 2020 from the Los Angeles Chargers'[1] Payroll/Human Resources Manager regarding his employment with the organization in 1984 and 1985 and confirming that Plaintiff was placed on injured reserve on August 13,1984 and that he remained employed by the Chargers through the 1985 training camp. Despite this overwhelming evidence, the Retirement Board of the Retirement Plan denied Plaintiff's claim for pension benefits.

16.     Specifically, at its May 14, 2020 meeting, the Retirement Board of considered Plaintiff's Credited Season(s)Application and – although recognizing that Plaintiff had two Credited Seasons for 1986 and 1987 – denied his request that the 1984 season qualify as a Credited Season. The Retirement Board based its determination that 1984 was not eligible to serve as a Credited Season because Plaintiff allegedly did not meet the requirements of section 1.11 of the Plan.

17.     The Retirement Board's denial decision in that regard was premised on the patently erroneous conclusion that Plaintiff was not on injured reserve for the 1984 season. The Retirement Board claimed that Plaintiff received a non-football injury in July 2984 [sic] and was moved to Reserve/Non-Football Injury status on August 13, 1984 and spent the rest of the 1984 season in that status. However, as shown earlier, Plaintiff received a football injury while with the Chargers and was placed on its injured reserve list as a result of that.

18.     Proceeding from the flawed premise that Plaintiff was on the Reserve/Non-Football Injury list for the 1984 season, the Retirement Board found that 1984 did not qualify as a Credited Season for Plaintiff under section 1.11(a) of the Plan because Plaintiff was not an Active Player,

---

[1] By the time of this letter the Chargers had relocated from San Diego to Los Angeles.

i.e., "a Player who is obligated to perform football playing services under a contract with an Employer", on the date of at least three 1984 regular-season or post-season NFL Games.

19. The Retirement Board further erroneously found that Plaintiff did not qualify for a Credited Season for 1984 under section 1.11(b) of the Plan based on the conclusion that Plaintiff was not paid the equivalent of his salary for any Games pursuant to an injury grievance settlement or an injury settlement waiver in 1984.

20. All of these conclusions are wrong as Plaintiff received a football injury while employed by the Chargers which entitled him to be placed on the injured reserve list and although his injury prevented him from playing during the 1984 season, Plaintiff remained with the team and the Chargers fully paid his salary for that season. As such, Plaintiff is entitled to participate in the Plan and to receive all pension benefits that are due and owing him based on his at least three Credited Season of playing in the NFL.

## CLAIMS FOR RELIEF

### Count 1 - Violations of ERISA, 29 U.S.C. § 1132(a)(1)(B), (a)(3)

21. Plaintiff repeats, realleges, and incorporates by reference Paragraphs 1-20 of this Original Complaint as though fully set forth herein.

22. The Retirement Plan is an "employee pension benefit plan" within the meaning set forth in ERISA. Plaintiff has exhausted all administrative remedies under the terms of the plan documents or exhaustion of any such remedies would have been futile and, thus, Plaintiff has satisfied all prerequisites to maintain this action.

23. The Retirement Plan has wrongfully denied Plaintiff the benefits due to him in accordance with the plan documents including the pension benefits due him as result of playing in the NFL for at least three Credited Seasons. The Retirement Plan has thus failed to act in

compliance with the language of the plan documents governing the Retirement Plan in violation of ERISA, 29 U.S.C. § 1132(a)(1)(B), (a)(3). The actions taken by the Retirement Plan were wrongful, willful and in bad faith.

24. Plaintiff has accrued pension benefits that Retirement Plan has refused to recognize, which entitles Plaintiff to retroactive credits and payments and placing Plaintiff in the same position he would have been in if the Retirement Plan had granted Plaintiff the relief requested by Plaintiff in his Credited Season(s) Application.

### Count 2 - Violations of ERISA, 29 U.S.C. § 1133(2)

25. Plaintiff repeats, realleges, and incorporates by reference Paragraphs 1-21 of this Original Complaint as though fully set forth herein.

26. Retirement Plan is an "employee pension benefit plan" within the meaning set forth in ERISA. Plaintiff has exhausted all administrative remedies under the terms of the plan documents or exhaustion of any such remedies would have been futile and, thus, Plaintiff has satisfied all prerequisites to maintain this action.

27. Despite numerous requests, Plaintiff was not provided with his full "NFL record" upon which the Retirement Board based its denial decision. Accordingly, Plaintiff was never granted the opportunity to present his full and complete case for pension benefits due to Retirement Plan withholding relevant records. As such, Plaintiff was denied a full and fair review by the Retirement Plan and its associated board and committees.

### DAMAGES

28. Plaintiff re-alleges all prior paragraphs of this Complaint and says that because of the conduct described above, Plaintiff has suffered damages measured by the full amount of all

past pension benefits due and owning him as a result of playing in the NFL for at least three Credited Seasons.

## DECLARATORY RELIEF

29. Plaintiff also seeks a declaration that he is entitled to receive all future pension to which he may be entitled for playing in the NFL for at least three Credited Seasons.

## ATTORNEY'S FEES

30. Plaintiff re-alleges all prior paragraphs of this Original Complaint and says that pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), Plaintiff seeks an award of reasonable and necessary attorney's fees from Defendant, in connection with the investigation, filing, preparation and trial of this action through the date a notice of appeal is filed by any party to this action. Plaintiff further seeks a conditional award of reasonable and necessary attorney's fees in the event of an appeal of this action to the United States Court of Appeals for the Fifth Circuit and the United States Supreme Court or, in the alternative, Plaintiff asks the Court to retain jurisdiction of this action for the limited purpose of awarding reasonable and necessary appellate attorney's fees at the conclusion of all appellate proceedings should the appellate courts decline to do so.

## CONDITIONS PRECEDENT

31. Plaintiff re-alleges all prior paragraphs of this Original Complaint and says that all covenants or conditions precedent to recovery on Plaintiff's claims for relief and to Defendant's liability therefore have been performed or have now occurred. Alternatively, Plaintiff alleges that the non-performance of any covenants or condition precedent to Defendant's liability to Plaintiff have been waived by Defendant or otherwise legally excused or have not caused Defendant to suffer any actual prejudice.

## CONCLUSION

32. Because of all the above and foregoing, Plaintiff has been damaged in a sum exceeding the jurisdictional limits of this Court.

## DEMAND FOR JURY TRIAL

33. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

PREMISES CONSIDERED, Plaintiff RAYMOND LEE WOODARD, JR. prays that the BERT BELL/PETE ROZELLE NFL PLAYER RETIRMENT PLAN be summoned to appear and answer herein as required by law and that upon final hearing or trial of this action, Plaintiff recover of and from Defendant, judgment for the following relief:

a. Declaring that (1) Defendant's refusal to award Plaintiff pensions benefits is void; (2) Plaintiff is entitled to receive all pension benefits due and owing him based on playing in the NFL for at least three Credited Seasons; (3) Defendant is obligated to pay Plaintiff future pension benefits based on playing in the NFL for at least three Credited Seasons; and 4) that Defendant did not afford Plaintiff a full and fair review of his claim for benefits;

b. A judgment awarding the Plaintiff retroactive credits and payments as described above, and placing Plaintiff in the same position in which he would have been if the Retirement Plan would have granted Plaintiff pension benefits based on the three Credited Seasons;

c. A judgment awarding Plaintiff the full amount of pension benefits due and owing based on at least three Credited Seasons in the NFL up to the date of judgement and ordering Defendant to pay all pension benefits to which Plaintiff would be entitled from the date of the judgment forward;

d. An award of reasonable and necessary attorneys' fees pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1) and/or ordering the payment of reasonable fees and expenses of this action to Plaintiff's counsel.

e. Prejudgment interest on all damages from date of accrual until date of judgment at the highest rate of interest allowed by law on all damages;

f.  Post-judgment interest on all damages from date of judgment until paid at the highest rate of interest allowed by law;

g.  Costs of Court; and

h.  Such other and further relief, general or special, at law or in equity, to which Plaintiff may show himself justly entitled pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or otherwise.

Dated: November 13, 2023

Respectfully submitted,

*/s/ Charles H. Clark*
Charles H. Clark
State Bar No. 04274000

LAW OFFICES OF CHARLES H. CLARK, P.C.
604 W. Woldert
Tyler, Texas 75702
903/593-2514
903/595-1294 fax
Email: chc@charlesclarklaw.com


Andy Tindel
Texas State Bar No. 20054500

MT2 LAW GROUP
MANN | TINDEL | THOMPSON
112 East Line Street, Suite 304
Tyler, Texas 75702
Tel: (903) 596-0900
Fax: (903) 596-0909
Email: atindel@andytindel.com

**ATTORNEYS FOR PLAINTIFF**